O’NIELL, C. J.
 

 The defendants have appealed from a judgment annulling a contract for the graveling of the public highways of a road district. It is called Consolidated Road District A. in the parish of Tangipahoa. The plaintiff, a contracting company, claims to have been the lowest bidder for the. work. The defendants, appellants, are the police jury, the board of supervisors of the road district, and S. A. Gano, the bidder to whom the contract was awarded.
 

 There were five or six bidders for the work, but the only contest, as to who was the lowest bidder was between the plaintiff and Gano. In fact, there is no dispute as to whose bid was the lowest, for Gano’s bid amounted to $17,153.88 more than plaintiff’s bid; Gano’s bid being $368,802.60, and plaintiff’s being $351,708.72. The question is whether the board of supervisors was justified in rejecting plaintiff’s bid and awarding the contract to Gano, the next lowest bidder.
 

 The transcript of the testimony is very brief, for there is no dispute about the facts. The only witness for the defendants was the chairman of the board of supervisors. He admitted that the reason why the board rejected or “disregarded,” plaintiff’s bid for furnishing and spreading the gravel — or the portion of it called sand-clay or bank-run gravel — was. that plaintiff’s foreman had said that the gravel was to come from the local pits or beds in Tangipahoa parish, whereas Gano intended to bring his gravel from his own pits, in Washington parish. The witness said that the board had had the board’s engineer inspect Gano’s gravel beds, and had the engineer’s report and analysis, before the board advertised for bids for the work; and that the board was satisfied with the quality of the gravel in the Gano beds. The witness testified that the board knew also the quality of the gravel in the local pits, in Tangipahoa parish, and was not willing that that kind of gravel should be used in the work to be done. The specifica
 
 *297
 
 tions, however, on which the board called for the bids, did not require that the gravel should come from the Gano beds, or .be of the same kind or quality as the gravel in the Gano beds. The specifications in that respect — as to how the gravel should be tested or screened — were very explicit; and it was stipulated in the specifications that, if ihe board’s engineer should find that any of the gravel furnished did not come up to the specifications, he could compel the contractor to remove it at his expense, even after the gravel was in place. The chairman of the board admitted, in his testimony, that the board was fully protected by the specifications for the kind and quality of gravel. It was not stipulated in the contract that was let to the defendant, Gano, and which is in contest, that the gravel should come from his pits, or from any. particular place. The chairman of the board testified that the board forgot to stipulate in the contract with Gano that the gravel should come from his pits, or be of the kind or quality in his pits. All of which leaves great doubt that it was at all important that the gravel should come from Gano’s pits and not from the local pits.
 

 In - the advertisement for the bids,, the board called for four alternative bids with regard to the gravel, viz.:
 

 7a. For unloading, hauling, spreading, etc., the sand-clay or bank-run gravel, to be furnished by the road district,-per cubic yard.
 

 7b. For unloading, hauling, spreading, etc., the washed or screened gravel, to be furnished by the road district, -per cubic yard.
 

 8a. For furnishing and delivering, hauling, spreading, etc., the sand-clay or bank-run gravel, -per cubic yard.
 

 8b. For furnishing and delivering, hauling, spreading, etc., the washed or screened gravel, -per cubic yard.
 

 Plaintiff’s bid on 7a was 80 cents per cubic yard; on 7b 93 cents per cubic yard; on 8a' $2.55 per cubic yard; and on 8b $3.20 per cubic yard.
 

 Gano did not bid on 7a or 8b, that is to say, he did not bid on the sand-clay or bank-run gravel to be furnished by the road district, or on the washed or screened gravel to be furnished by him. His bid on 7b for unloading, hauling, spreading, etc., the washed or screened gravel, to be furnished by the road district, was 85 cents per cubic yard; and, on 8a, for furnishing and delivering, hauling, spreading, etc., the sand-clay or bank-run gravel, was $2.75 per cubic yard. The board concluded to use 36,236 cubic yards of sand-clay or bank-run gravel and 8,964 cubic yards of washed or screened gravel.
 

 Instead of matching Gano’s bid of $2.75 against plaintiff’s bid of $2.55 — both bids being (8a) for furnishing and spreading, etc., the sand-clay or bank-run gravel — the board matched Gano’s bid (8a), $2.75 per cubic yard, against plaintiff’s bid (7a), 80 cents per cubic yard, for unloading, hauling, spreading, etc., the sand-clay or bank-run gravel to be furnished by the road district; but the board first arbitrarily added to plaintiff’s bid (7a) of 80 cents the sum of $2.25 as the
 
 cost
 
 per cubic yard for the,sand-clay or bank-run gravel if the board should buy it from Gano and furnish it to plaintiff. Thus the board raised plaintiff’s bid (Sa) for furnishing and spreading, etc., the sand-clay or bank-run gravel, from $2.55 to $3.05 per cubic yard. And thus plaintiff’s total bid was raised from $351,708.72 to $369,826.-72, which was $964.12 above Gano’s bid. The chairman of the board testified that the board could not have bought and delivered the gravel from the Gano pits for less than $2.25 per cubic yard," and that there was no other gravel that the board would have accepted, nearer than the Gano pits. The
 
 *299
 
 result was that competition with Gano was shut out. He could furnish and deliver and spread his gravel on the roads, complete, for $2.75 per cubic yard. Any other bidder had to allow $2.25 for the cost of Gano’s gravel, leaving a margin of only 50 cents-per cubic yard for unloading, hauling, and spreading the gravel, complete. A comparison with the other bids for unloading, hauling, and spreading the gravel, complete, shows that no one could have bid profitably, as low as 50 cents per cubic yard for doing the work. Hence no one could compete with Gano, so long as the board would have none other than his gravel.
 

 If the board had specified in the advertisement for bids that the gravel had to come from Gano’s pits in Washington parish, he would have had a monopoly of the bidding; and no court of justice would have sustained an award of the contract to him.
 

 Section 2 of Act 249 of 1924 requires lhat public boards, in making contracts for public work, shall award the contract, “to the lowest possible bidder,” or reject all bids and readvertise for bids. That does not mean that the contract may be awarded to an irresponsible bidder. Perhaps the word “possible” adds nothing to the already superlative, “lowest bidder.” The statute means that the lowest bidder must have the contract, if he be a responsible bidder, even though he be not the most responsible of the bidders.
 

 It was argued in this case that the plaintiff was a small concern, comparatively, and perhaps not so responsible as Gano, financially. But that is a matter of no importance, because it was not the reason — or a reason' — for which plaintiff’s bid was rejected.
 

 The judgment is affirmed at the cost of the defendant, Gano.