(109 So. 34)

No. 27518.

## DONALDSON et al. v. POLICE JURY OF TANGIPAHOA PARISH et al.

(March 1, 1926. On Rehearing, May 3, 1926. On Application for Rehearing, May 31, 1926.)

*(Syllabus by Editorial Staff.)*

On Rehearing.

1. Highways &ommat;130½, New, vol. 12A Key-No. Series—Taxpayer, to enjoin unauthorized road contract, need only allege facts necessarily leading to conclusion that unlawful act will injuriously affect him or his property.

Taxpayer, in suit to enjoin police jury from executing unauthorized road contracts, need only allege facts necessarily leading to conclusion that unlawful act will injuriously affect him or his property.

2. Injunction &ommat;74—Taxpayer may restrain officers from violating legal duties so as to increase burden of taxation or otherwise injuriously affect taxpayer or his property.

Taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which will increase burden of taxation or otherwise injuriously affect taxpayer or his property.

3. Highways &ommat;130½, New, vol. 12A Key-No. Series—Allegation of creation of road fund by taxpayers and violation by police jury in entering into road contract obtained without competitive bidding held to show sufficient interest by taxpayers to sue for annulment of contract.

Taxpayers seeking to annul road contract between police jury and highway company, alleging creation of road fund by taxpayers, liability for taxation, violation by police jury of its powers resulting in increased burden of taxation, omission from road contract of provision for supervision and letting of contract without competitive bidding, *held* to show sufficient interest to entitle plaintiffs to attack judicially road contract.

4. Highways &ommat;113(2)—Police jury is invested with paramount authority in location, construction, and maintenance of roads in road districts it has created, and may let contracts (Act No. 118 of Ex. Sess. 1921, § 7, as amended by Act No. 99 of 1922; Act No. 30 of Ex. Sess. 1917; Const. 1921, art. 14, § 14, par. [c]; Rev. St. § 3364 et seq.; Act No. 24 of 1870; Act No. 203 of 1902; Act No. 49 of 1910; Act No. 183 of 1914 as amended by Act No. 199 of 1916).

Under Act No. 118 of Ex. Sess. 1921, § 7, as amended by Act No. 99 of 1922, repealing Act No. 30 of Ex. Sess. 1917, Const. 1921, art. 14, § 14, par. (c), and in view of course of legislation (Rev. St. § 3364 et seq., Act No. 24 of 1870, Act No. 203 of 1902, Act No. 49 of 1910, and Act No. 183 of 1914, as amended by Act No. 199 of 1916), police jury is invested with paramount authority in all matters respecting location, construction, and maintenance of roads in road or subroad districts it has created, and has power to let contracts.

5. Highways &ommat;113(2)—Power by board of supervisors of road districts to call for bids, award contracts, and supervise construction of road is to be performed merely as agent of police jury (Act No. 118 of Ex. Sess. 1921, § 7, as amended by Act No. 99 of 1922; Const. 1921, art. 14, § 14, par. [c]).

Under Act No. 118 of Ex. Sess. 1921, § 7, as amended by Act No. 99 of 1922, and Const. 1921, art. 14, § 14, par. (c), power given to board of supervisors of road district to call for bids, award contracts, and supervise construction of road, is to be performed merely as

agent of police jury, which is governing authority of district.

**6. Highways** ⬦➔113(3)—**Contract for construction of road, omitting provision for supervision, which was contained in specifications on which bidding was had, held properly annulled.**

Contract between police jury and highway company for construction of road, from which provision for supervision provided for in specifications on which bids were submitted was clipped by president of company, materially departs from terms on which bidding was had, and hence was properly annulled.

**7. Highways** ⬦➔113(3)—**Specifications for road contract cannot be altered without new advertisement and new bids.**

Specifications for road contract cannot be altered after bids have been made without a new advertisement giving all bidders an opportunity to bid under new conditions.

**8. Highways** ⬦➔113(3)—**Public officers cannot enter into road contract with lowest bidder containing provisions beneficial to him, not included in specifications on which bids were invited.**

Public officers cannot enter into road contract with lowest bidder containing provisions beneficial to him but not included or contemplated in specifications on which bids were invited.

**9. Corporations** ⬦➔452.

Acts and contracts of a public corporation are generally executed and signed on its behalf by its executive officer.

St. Paul, and Brunot, JJ., dissenting.

Appeal from Twenty-First Judicial District Court, Parish of Tangipahoa; Columbus Reid, Judge.

Suit by Oscar Donaldson and others against the Police Jury of Tangipahoa Parish and others. Judgment for plaintiffs, and certain defendants appeal. Annulled in part, and in part modified and affirmed.

A. L. Ponder, Jr., Dist. Atty., of Amite, for appellant Police Jury of Tangipahoa.

A. L. Ponder, Sr., of Amite, and Benton & Benton, of Baton Rouge, for appellants Standard Highway Co., Inc.

Harry Gamble, of New Orleans, and Shelby Reid, of Amite, for appellees.

BRUNOT, J. This is a suit brought by five citizens and resident taxpayers of consolidated road district A of Tangipahoa parish. The plaintiffs seek to annul a contract which the police jury of the parish entered into with the Standard Highway Company, Inc., for the construction of roads in said district, to perpetually enjoin the execution of the contract, and to restrain two members of the board of supervisors of the district from approving or joining in the execution of the contract. From a judgment annulling the contract, enjoining the police jury and Standard Highway Company, Inc., from executing it, and enjoining the police jury from entering into any contract for the construction of roads in consolidated road district A, to be paid for out of the special taxes voted for roads in said district, both defendants, the police jury and the Standard Highway Company, Inc., appealed.

There is no attack upon the proceedings creating consolidated road district A of Tangipahoa parish, or upon the election to incur debt for road construction therein, or upon the issuance and sale of bonds to obtain funds for that purpose. Plaintiffs attack the authority of the police jury of the parish to contract with the Standard Highway Company, Inc., for the construction of 33 roads, or sections of roads, in the district, and to appropriate $264,121.22 of the fund realized from the sale of bonds to pay for said road construction.

The petition, stripped of gratuitous and unimportant allegations, alleges that the police jury exceeded its authority in letting the contract to the Standard Highway Company, Inc.; that the letting of contracts for road construction is the function of the board of supervisors of the road district; that the contract was entered into by the police jury without the recommendation or approv-

al, and against the will, of the board of supervisors of the district; and that the contract, if it was let upon the bid submitted by the Standard Highway Company, Inc., to the board of supervisors of the district upon specifications prepared by the board of engineers, omits a vital provision of the specifications, viz., for engineering supervision of the work. It also alleges that when the contract was executed, the conditions existing at the time the bids were submitted had materially changed, and the cost of road construction had decreased. It is apparently upon this allegation that plaintiffs predicate their charges of tyranny, oppression, fraud, unseemly haste, and favoritism.

The record is, in part, a history of the various incidents leading up to and culminating in this suit. After the sum realized from the sale of the bonds had been placed to the credit of the road district fund, specifications for the construction of the roads named in the contract were properly made, and the usual advertisement for bids was published. There were five or six bidders for the work. The lowest bidders were S. A. Gano and the Standard Highway Company, Inc. The Gano bid was $368,862.20, and the bid of the Standard Highway Company, Inc., was $351,708.12, or $17,154.08 less than the Gano bid. Notwithstanding this vast difference in the bids, the board of supervisors of consolidated road district A approved and recommended to the police jury the acceptance of the Gano bid as the lowest responsible bid. The police jury accepted the approval and recommendation of the board of supervisors of the district without investigation, and executed a contract with Gano in accordance therewith. The Standard Highway Company, Inc., successfully attacked that contract in the lower court, and, on appeal, this court affirmed the judgment. 158 La. 294, 103 So. 819. The decree in that case is as follows:

"That the said police jury and board of supervisors be ordered and required to reject all of the bids submitted and readvertise the work for the construction of highways in said road district, or that they accept the bid of petitioner, Standard Highway Company, Inc."

This judgment was rendered March 9, 1925. The bid of the Standard Highway Company, Inc., was thereafter accepted by the police jury, and the contract with that company was executed by A. M. Edwards, president of the police jury, and W. A. Benton, president of the Standard Highway Company, Inc., at Ponchatoula, Tangipahoa parish, on March 18, 1925.

On April 14, 1925, the police jury, which body had originally appointed the three members of consolidated road district a board of supervisors, passed a resolution dismissing two of its appointees, viz., R. D. Fellows and James Jumonville, from further service as members of the board, and appointed two other resident taxpayers of the district to fill the vacancies thus created.

We are not now concerned with the suit which was filed by R. D. Fellows, James Jumonville, and three other taxpayers, because that suit was dismissed on an exception of lack of legal interest. Nor are we concerned with the title to office suits filed by Fellows and Jumonville, which were consolidated for trial and are now before this court on appeal, because we are handing down an opinion therein this day, in which we have ordered that both cases be transferred to the Court of Appeals.

The present suit was filed May 22, 1925, and it joins, as defendants therein, the police jury, the Standard Highway Company, Inc., and the two members of the board of supervisors who were appointed to fill the vacancies on the board created by the removal of Fellows and Jumonville. The police jury and the Standard Highway Company, Inc., before answering the suit, filed the following exceptions:

First, that the court is without jurisdiction ratione materiæ.

Second, that petitioners are without right, interest, or authority to prosecute the suit or to stand in judgment therein.

Third, misjoinder of plaintiffs.

Fourth, nonjoinder of parties defendant.

Fifth, lis pendens.

Sixth, no legal right or cause of action.

Defendants also filed an alternative plea of estoppel.

The trial court heard and overruled five of the defendants' exceptions, but the exception to the plaintiffs' right, interest, or authority to prosecute the suit and the exception of no legal right or cause of action were referred to the merits. In the judgment rendered the court overruled these exceptions.

In considering the exception to the right and interest of the plaintiffs to prosecute the suit, we find that the petition does not allege that the burden upon the taxpayers of the district has been increased by the award of the contract to the Standard Highway Company, Inc., but that the only alleged burden results from the issue of the bonds authorized by the vote of the taxpayers of the district and by the taxes levied and to be levied to retire these bonds. It is alleged that the police jury exceeded its authority in awarding the contract to the Standard Highway Company, Inc., without the recommendation and approval of the then board of supervisors of the road district; that the decree of this court that the board of supervisors and the police jury should readvertise for bids or award the contract to the Standard Highway Company, Inc., meant that the two bodies should act jointly in the award; that under the provisions of Act 99 of 1922, amending section 7 of Act 118 of the Extra Session of 1921, the board of supervisors of the road district is authorized to let contracts for road construction therein; and that the contract which was entered into omits a material stipulation of the specifications. The gravamen of the plaintiff's complaint relates to the relative power of the police jury and the board of supervisors of the road district in the matter of letting a road contract. This, in our opinion, is strictly a governmental or political question, entirely unrelated to questions concerning the monetary interests of the taxpayers. If it were not for the allegation in the petition that the contract with the Standard Highway Company, Inc., was let by a private transaction and without competitive bidding, it is our opinion that the petition does not otherwise allege a sufficient right or interest in the plaintiffs to prosecute this suit; but even the petition itself negatives that allegation, because paragraphs 17 and 18 thereof specially refer to the advertisement, specifications, and bids. The record shows that every legal requirement was complied with up to the time of the award of the contract to the Standard Highway Company, Inc., and it is clear that what really provoked the litigation was the action of the police jury in awarding the contract to the Standard Highway Company, Inc., according to the alternative decree of this court in Standard Highway Co. v. Police Jury, 158 La. 294, 103 So. 819, without consulting the board of supervisors of the road district and because of the subsequent removal of two of the members of that board. The petition is filled with the pleaders' conclusions, all of which are deducible from those acts. When there is an alleged conflict of the power and authority of two governmental agencies, taxpayers, as such, have no right or interest to champion the cause of either in the courts. That is the real situation which is presented in this case, and we are of the opinion that the exception of no right or interest in the plaintiffs to prosecute this suit should have been sustained. This conclusion disposes of the case and renders it unnecessary to consider

the defenses set up in the answer, or the merits as they are presented.

For these reasons the judgment appealed from is reversed, and it is now ordered and decreed that the exception of want of right or interest in the plaintiffs to prosecute this suit be sustained, and the suit dismissed at their cost in both courts.

### On Rehearing.

ROGERS, J. On the original hearing we sustained an exception of lack of interest in the plaintiffs and dismissed their suit. Our reconsideration of the case has convinced us we erred in so doing.

Plaintiffs attack the contract between the police jury and the defendant Standard Highway Company, Inc., as illegal and prejudicial to them. They show the creation of the fund by the taxpayers of the road district for the purpose of constructing roads in said district, and they aver the pledge, under the law, without limit of their property and the property of other taxpayers to continue annual taxation for the repayment of the debt if the fund is expended. They allege the police jury transcended its lawful powers and violated its legal duty in an unauthorized proceeding, which will result in the increase of their burden of taxation and injuriously affect them and their property by an unlawful appropriation and pledge of the fund belonging to the road district by squandering same, and by laying petitioners liable to a continuous tax levy in the future to satisfy the debt created by the unlawful disbursement of said fund. They allege the board of supervisors of the road district, and not the police jury, is the proper authority to contract for the disbursement of said fund. They further allege the clause in the specifications providing for engineering supervision of the work was omitted from the contract; that said omitted provision is a necessary and vital condition of the contract for the protection of the taxpayers to pre-

vent defective construction and squandering of the fund; that the omission of said clause was unfair to other bidders and amounted to the perpetration of a fraud upon petitioners. They allege, also, that said contract was let without advertisement or competitive bidding, and constituted, therefore, a mere private transaction between the police jury and the Standard Highway Company, Inc.

The first question to be decided is whether plaintiffs have any standing in court to attack the action of the police jury. Defendants contend they have not, because they have not shown how that action increases their burden of taxation or otherwise adversely affects their monetary interests.

[1] While it is necessary for a taxpayer to show the manner of his injury, it is not practical always to show the extent of that injury. He is not required to set forth with mathematical certainty his injury. It is sufficient for him to allege a state of facts necessarily leading to the conclusion that the unlawful act of which he complains will injuriously affect him or his property.

The cases are numerous where taxpayers have invoked the aid of the courts to test the validity of acts of public officers. The general principle announced in many of the cases in which the action was maintained is that the injury arises whenever public officers act in violation of the law in expending public funds or in imposing liabilities upon the taxpayer.

The action is regarded as having a public character, and as being a proceeding in which the public complains. Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070.

The following are some of the cases in our own jurisdiction holding that a taxpayer is entitled to maintain a proceeding instituted by him where the object of the suit is to enjoin the execution, enforcement, or award of an unauthorized or illegal act or contract, viz.: Handy v. New Orleans, 39 La. Ann.

107, 1 So. 593; Conery v. Waterworks Co., 39 La. Ann. 770, 2 So. 555; Orr v. City, 50 La. Ann. 881, 24 So. 666; City Item v. New Orleans, 51 La. Ann. 713, 25 So. 313; Redersheimer v. Flower, 52 La. Ann. 2089, 28 So. 299; Johnson v. New Orleans, 105 La. 149, 29 So. 355; Hudson v. Police Jury, 107 La. 387, 31 So. 868; Sugar v. Monroe, 108 La. 677, 32 So. 961, 59 L. R. A. 723; Murphy v. Police Jury, 118 La. 402, 42 So. 976; Saxon v. New Orleans, 124 La. 713, 50 So. 663; Bienvenue v. Police Jury, 126 La. 1103, 53 So. 362; Dunham v. Slidell, 133 La. 215, 62 So. 635.

[2] Counsel for defendants cite State v. Kohnke, 109 La. 838, 33 So. 793. The case is not appropriate to the present issue. There the court maintained the right of a citizen and taxpayer to proceed by quo warranto to test the right to office of certain members added to the sewerage and water board of the city of New Orleans. The statement in the opinion to the effect that the relator had no standing because there was nothing to show that his burden as a taxpayer would be increased was not necessary to a decision in the case. Moreover, the legal principle considered was stated too narrowly by the learned author of the opinion. The true doctrine of the cases in which taxpayers have been complainants is that they have the right to resort to judicial authority to restrain their public servants from transcending their lawful powers, or violating their legal duties in any unauthorized mode which will increase the burden of taxation or otherwise injuriously affect the taxpayers or their property. See Morris v. Gas Co., 121 La. 1016, 46 So. 1001.

Counsel for defendants cite, also, Black v. Railway & Light Co., 145 La. 180, 82 So. 81. Nothing that we have said herein in any wise conflicts with that decision.

[3] In our opinion, plaintiffs have shown sufficient interest to attack judicially the act of the police jury of which they complain.

161 La.—16

The next question presented for decision is whether the police jury was authorized to enter into the contract, if otherwise legal, independently of the board of supervisors of the road district.

A review of the legislation on the subject shows that the police jury was the governing body in road construction and maintenance from 1870 until 1914. See Rev. Stat. § 3364 et seq.; Act 24 of 1870; Act 203 of 1902; Act 49 of 1910. At its regular session held in the year 1914, the Legislature enacted Act 183, under the provisions of which the police jury retained its powers, except such as it might be deprived of by the appointment, on the application of 50 per cent. of the property owners, of a board of supervisors. Under the terms of the statute, the board of supervisors was constituted the agent of the police jury, and it was provided that the contracts let by the board should be recognized and approved by the governing authority, "unless attackable for fraud or its equivalent, or unless attackable on legal grounds." Act 183 of 1914 was amended by Act 199 of 1916. By the provisions of this act the board of supervisors was substituted for the police jury as the governing authority. The police juries resented this encroachment on their authority, and litigation resulted. See Lebeau v. Police Jury, 140 La. 172, 72 So. 914; Bolinger v. Police Jury, 141 La. 596, 75 So. 423. At the Extra Session of the Legislature held in 1917, Act 183 of 1914, as amended by Act 199 of 1916, was repealed, and Act 30 of 1917 was enacted in its stead. Under the terms of this statute, the police jury was reinvested with its power with substantially the same relationship existing between it and the board of supervisors as established by the act of 1914. In all these enactments, the Legislature exercised its discretion unhampered by constitutional restrictions. This situation was changed by the framers of the Constitution

of 1921, and in paragraph (c), § 14, art. 14, they provided as follows:

"The Legislature may by general law authorize the police juries to create road districts and subroad districts * * * and may, by general law and within the limitations and conditions herein contained, authorize road districts and subroad districts, so created, *through the police jury or juries of the parish or parishes, as the governing, authority thereof,* to incur debt and issue negotiable bonds for the purpose of opening, constructing, improving and maintaining public roads, highways, and bridges in such districts," etc. (Writer's italics.)

Following the adoption of the Constitution, the Legislature dealt with the subject again, and at its extra session held in the year 1921 it enacted Act 118, which repealed Act 30 of 1917 and all other laws in conflict with its provisions. This statute, as amended by Act 99 of 1922, is the present law, and is the law applicable to the issues involved in this case.

Under section 7 of Act 118 of 1921, the board of supervisors was vested with the power to "call for bids, to let the contract for road construction and supervise the construction of the roads" in the district. The section also provided that the police jury as the governing authority "shall recognize and approve the contracts let by the supervisors unless attacked for fraud or its equivalent, or on other legal grounds."

The section was amended by Act 99 of 1922 so as to omit the quoted provision referring to the binding character of the contract recommended by the supervisors, and, in its stead, appears the declaration that:

"The police jury shall retain supervisory authority in all matters pertaining to road construction, location and maintenance."

[4, 5] If the provision in the statute to the effect that the supervisors have the power to call for bids, to let contracts for, and to supervise road construction is to be isolated and construed without reference to the other provisions in the legislative act, then, apparently, the board of supervisors, and not the police jury, is the paramount authority in such matters. If, on the other hand, the elementary rule of construction is to be applied, and the statute is to be read as a whole, in connection with the appropriate constitutional provision and other legislation on the same subject-matter, it is clear that the intention of the lawmakers was to confer supreme authority upon the police jury and not upon the supervisors. Under the law the police jury is expressly designated as the governing authority in road districts and subroad districts, and it is given supervisory power in all matters pertaining to road construction, location, and maintenance in such districts. The power to let contracts in such matters is an inevitable and necessary concomitant of the power to govern the districts. It would be a meaningless and empty authority if this were not so. It is true, the statute gives the supervisors the power to call for bids, award contracts, and supervise construction, but these acts are to be performed merely as the agents of the governing authority, and they are subject always to the approval and supervision of that body.

Our conclusion is, therefore, that the police jury is invested with the paramount authority in all matters in respect of the location, construction, and maintenance of roads in the road districts or subroad districts it has created.

Having determined that plaintiffs have a standing to attack the contract which, if lawful, the police jury was empowered to enter into, it becomes necessary for us to examine into the legality of said agreement.

The decree of this court in Standard Highway Company, Inc., v. Police Jury, 158 La. 294, 103 So. 819, was handed down on March 9, 1925. On the next day, March 10, 1925, the police jury was convened, and, apparently, without having the bid or specifications

before it, accepted the bid of the Standard Highway Company, authorizing the execution of a contract in accordance therewith. On March 18, 1925, the formal contract was taken by the president of the Standard Highway Company to the home of the president of the police jury at Ponchatoula, where it was signed. Prior to the presentation of the contract and attached specifications for the signature of the president of the police jury, the president of the Standard Highway Company had clipped off the part of the specifications providing for engineering supervision of the work, and the contract was actually executed with that condition omitted from the agreement.

The president of the Standard Highway Company testified that he prepared the contract, and he stated, further, that he cut off the clause in reference to the engineering supervision because he considered it had no place in the specifications, that it was illegal, and that his company had the right, which he exercised on its behalf, to strike it out.

[6] We find ourselves unable to agree with this view of the transaction. The proposals for the work were duly advertised as required by law. Bidders were required to submit their bids in conformity with the terms and conditions set forth in the plans and specifications on file in the office of the engineer. Among the conditions provided for in the specifications was one calling for engineering supervision of the work. It is undisputed that the contract was signed with that provision eliminated. Manifestly, there was a variance in that respect between the bid called for and submitted to the board of supervisors and the contract as it was finally executed by the president of the police jury. The omission of the right of engineering supervision was a material departure in the contract from the terms and conditions upon which the bidding was had. It was neither an unnecessary nor unimportant part of the transaction. The president of the Standard Highway Company, Inc., who is an able member of the bar, could not have thought so at the time, else he would not have troubled himself to sever the provision from the specifications. Moreover, the importance of the condition is shown by the proceedings in the case between the Standard Highway Company and the police jury, in which the defendant sought to justify its action in awarding the contract to S. A. Gano instead of to the Standard Highway Company on the ground of the superiority of the gravel which Gano purposed to use. In commenting upon that phase of the litigation, we said at page 297 of the opinion (103 So. 820):

"The specifications in that respect as to how the gravel should be tested or screened were very explicit; and it was stipulated in the specifications that, if the board's engineer should find that any of the gravel furnished did not come up to the specifications; he could compel the contractor to remove it at his expense, even after the gravel was in place. The chairman of the board admitted, in his testimony, that the board was fully protected by the specifications for the kind and quality of gravel."

[7, 8] Specifications cannot lawfully be altered after the bids have been made without a new advertisement giving all bidders an opportunity to bid under the new conditions. Public officers cannot enter into a contract with the lowest bidder containing substantial provisions beneficial to him, not included in or contemplated in the terms and specifications upon which bids are invited. The contract must be the contract offered to the lowest responsible bidder by advertisement. See 19 R. C. L. § 357, p. 1071.

To permit a material departure in the contract from the terms and specifications upon which the bidding is had would open wide the door to favoritism and defeat the purpose of the law in requiring contracts to be let upon bids made upon advertised specifications.

Counsel for defendants argue that the con-

tract itself is the all-important thing to be considered, and that all of the specifications could have been left unattached to the contract without effecting a change, for the specifications upon which the bids were submitted were the only basis for the agreement, and the contract, in so many words, recognized this fact.

We agree in the opinion of counsel that the contract is the thing to be considered in disposing of the present litigation. We are unable, however, to place the same interpretation on the terms of the agreement as do counsel. Under the stipulations of the contract, the contractor agrees "to construct," in accordance with the annexed proposal, plans, and specifications, the roads described "in the aforesaid proposals, plans, and specifications governing the letting of said contract." The specifications annexed to the contract, however, are lacking the important condition calling for engineering supervision, the object of which, manifestly, was to insure that the roads described "in the aforesaid proposals, plans, and specifications" shall be constructed in accordance therewith.

[9] The acts and contracts of a public corporation are generally executed and signed on its behalf by its executive officer. It was clearly the intention of the members of the police jury that this general rule should be followed in its transaction with the Standard Highway Company. The resolution under which the bid was accepted and the contract awarded expressly requires the execution of a formal contract to carry into effect the vote of the members of the police jury. The preamble of the resolution discloses that it was adopted for the purpose of accepting the bid and awarding the contract to the Standard Highway Company, Inc., and to instruct and empower the president of the police jury to enter into a contract with said company to be drawn and executed in accordance with the plans and specifications upon which the said bid was submitted. In the body of the resolution appears the following:

"Be it further resolved that the president of the police jury be and he is hereby instructed, authorized, and empowered to sign with said company the contract for said work, the same to be prepared and executed in accordance with the plans and specifications which were the basis for the submission of said bids."

As we have heretofore stated, the contract which was executed was not in accordance with the "specifications" that were the basis for the submission of bids, and the president of the police jury testified that he would not have signed it as presented to him if his attention had been called to the omission of the clause providing for the engineering supervision of the work.

The judgment appealed from is entirely too broad in its scope. It erroneously holds that the defendant police jury, under the terms of Act 99 of 1922, is without authority to let contracts for the construction of roads in road districts, that power being vested by said act solely in the board of supervisors; and it goes too far in enjoining and restraining the defendant police jury from making or entering into any contract for the construction of roads in said road district A to be paid for out of the special taxes voted for said purpose in said district. In those respects, therefore, the said judgment will have to be modified.

For the reasons assigned, so much of the judgment appealed from as holds that the defendant police jury is without authority to let contracts for the construction of roads in road districts, and that said power is vested solely in the board of supervisors, and which enjoins and restrains the said defendant police jury from making or entering into any contract for the construction of roads in said road district A to be paid for out of the special taxes voted for said purpose in said district, is annulled. In all other respects

the said judgment is affirmed. All costs of this suit to be paid by the defendant Standard Highway Company, Inc. The right to apply for a rehearing is reserved to all the parties litigant.

ST. PAUL and BRUNOT, JJ., dissent.

#### On Application for Rehearing.

PER CURIAM. Appellants and appellees have applied for rehearings. After carefully considering the applications, we see no reason to change our views as expressed in the opinion handed down on the rehearing. Appellants, however, in their petition for a rehearing, have suggested, in the alternative, that our decree is susceptible of misinterpretation and should be revised or interpreted so as to remove any doubt as to its true import.

The opinion shows, unmistakably, that the contract under discussion was the formal written contract signed by the president of the police jury on behalf of that body, and by the president of the Standard Highway Company, Inc., in behalf of that concern, and not the resolution of the police jury accepting the bid of the Standard Highway Company, Inc., and authorizing its president to enter into a contract to carry the resolution into effect.

In affirming that portion of the judgment of the district court which annulled the contract between the police jury and the Standard Highway Company, Inc., and enjoined and restrained said defendants from executing said contract, we had in mind and intended to affect only the formal written contract entered into between the presidents of the respective contracting parties in an attempt to carry out the resolution of the police jury. This, as we understand it, is the effect of our decree, and we now so hold. Under this interpretation, no impediment exists to the execution of the proper and legal contract by the president of the police jury and by the president of the Standard Highway Company, Inc. With this explanation, both applications for rehearings are refused.