823 So.2d 1085 (2002)
Billy Brooks HUDSON, et al., Plaintiffs-Appellants,
v.
CITY OF BOSSIER, et al., Defendants-Appellees.
No. 36,213-CA.
Court of Appeal of Louisiana, Second Circuit.
August 14, 2002.
Jeffrey Lee Little, Shreveport, for Plaintiffs-Appellants.
John Keith Guice, for Appellee, Bossier Parish School Board.
Lunn, Irion, Johnson, Salley & Carlisle by Charles W. Salley, Penny Nowell, Shreveport, for Isle of Capri Casino.
Cook, Yancey, King & Galloway by Edwin L. Blewer, and Glen Langley, Shreveport, for Bossier Parish Sheriffs Office.
Klotz, Simmons & Brainard by David Klotz, Shreveport, for Greater Bossier Economic Development Foundation.
Judy A. Welch, Director, Johnny Gray Jones, Youth Shelter, for Johnny Gray Jones Youth Shelter.
Piper & Associates by Robert E. Piper, Jr., Shreveport, for Horseshoe Entertainment.
James Douglas Hall, City Attorney, for City of Bossier City.
Pugh, Pugh & Pugh by Robert G. Pugh, Shreveport, and James M. Bullers, District Attorney for Bossier Parish, for Bossier Parish Police Jury.
*1086 Before NORRIS, GASKINS and PEATROSS, JJ.
NORRIS, Chief Judge.
This appeal arises out of a taxpayer suit alleging that the City of Bossier City illegally contracted away its right to levy a per-person boarding tax on riverboat gaming operations within its jurisdiction. The plaintiffs now appeal the trial court's grant of an exception of no right of action filed by all defendants except the Bossier Parish Police Jury.

Facts
The plaintiffs in this case are an uncertified class of taxpayers and former members of the Bossier Parish School Board who challenge the legality of the contract between the City of Bossier City and the Riverboat Gaming Partnership d/b/a/ Isle of Capri Casino-Bossier City ("Isle of Capri"), and Horseshoe Entertainment ("Horseshoe").
This case should be read in companion with Horseshoe Entertainment v. Bossier Parish Police Jury, 30,502 (La.App. 2 Cir. 6/26/98), 714 So.2d 920, writ denied 98-1941 (La.11/6/98), 728 So.2d 392, and Hudson v. City of Bossier, 33,620 (La.App. 2 Cir. 8/25/00), 766 So.2d 738, writ denied 2000-2687 (La.11/27/00), 775 So.2d 450, (hereinafter "Hudson I") which both address the legislation and contract at issue in this suit.
This court's opinion in Hudson I clearly outlined the legislative and political history of this case and is worth repeating here.
In 1994, the legislature authorized the "local governing authority" of the parish or municipality where a gambling boat is berthed to impose an admission fee of up to $2.50 for each boarding passenger.
* * *
In 1995, the legislature amended La. R.S. 27:93 to authorize a $ .50 increase in the boarding fee in the Parishes of Caddo and Bossier with the monies being dedicated to the respective road funds of the two parishes.
* * *
La. R.S. 27:93(B) provided that "other than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of river boats and the gaming operations conducted thereon."
The Contracts
Bossier City, the local governing authority where the gambling boats involved in the instant litigation are berthed, made a deal with the casinos not to assess a boarding tax/fee. Instead, in 1994, Riverboat Gaming Partnership d/b/a Isle of Capri Casino-Bossier City ("Isle of Capri"), Horseshoe Entertainment ("Horseshoe"), and Bossier City negotiated a fixed fee arrangement for a term of 10 years "in lieu of any future modifications ... (and) in complete satisfaction of any and all gaming revenues to be received ..."
Horseshoe Entertainment held that the City of Bossier City, and not the Bossier Parish Police Jury, was the proper local governing authority authorized under La. R.S. 27:93(B) to levy the per-head admission tax. It also concluded that the agreement between the City and the riverboats contracting away the taxing power delegated to it by the legislature was contrary to public policy and invalid. This holding was arguably dicta considering the conclusion that the Bossier Parish Police Jury was not the proper authority to levy the per-head admission tax.
*1087 Thereafter, in August of 1997, the Bossier Parish School Board filed suit, seeking to declare the agreement null and void. However, the school board abandoned its position in pleadings which resulted in the granting of defendant's summary judgment motion that recognized the validity of the agreement, a judgment that the School Board did not appeal.
The plaintiffs then filed the instant suit, seeking to hold the contract invalid. Several defendants filed exceptions, including res judicata, based on the School Board's prior suit, and no right of action. The trial court sustained the exception of res judicata. This court's holding in Hudson I overruled the trial court's grant of defendants' exception of res judicata, and remanded the case to the trial court. All defendants, except the Bossier Parish Police Jury, then re-asserted their exception of no right of action, which was granted by the trial court.[1] Plaintiffs appeal.

Discussion
In granting the exception of no right of action, the trial court found that the plaintiffs had failed to show that the conduct complained of resulted in an increased tax burden, and that therefore the plaintiffs had no standing to challenge the legality of the contract at issue under the rules established by the Louisiana Supreme Court in Alliance for Affordable Energy v. City Counsel of New Orleans, 96-0700 (La.7/2/96), 677 So.2d 424 and Louisiana Associated General Contractors v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991).
The trial court recognized, however, "the local governing authority could not `contract away' the taxing power delegated to it by the Legislature ... and the clause in the Agreement doing such is contrary to public policy and invalid," and cited Horseshoe, supra for that proposition.
"The sole purpose of a peremptory exception of no right of action is to challenge the plaintiff's interest in the subject matter of the suit or his legal capacity to proceed with the suit." McCall v. McCall, 96-0394 (La.App. 4 Cir. 1/29/97), 688 So.2d 193, writ denied 97-0534, 97-0539 (La.5/1/97), 693 So.2d 745, citing Marquis v. Cantu, 371 So.2d 1292 (La.App. 3 Cir. 1979). "Stated differently, are plaintiffs in the class of persons to whom the law affords this cause of action." Alliance for Affordable Energy, supra at 428.
The Louisiana Supreme Court has held as far back as Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34 (1926) that,
The cases are numerous where taxpayers have invoked the aid of the courts to test the validity of acts of public officers. The general principle announced in many of the cases in which the action was maintained is that the injury arises whenever public officers act in violation of the law in expending public funds or imposing liabilities upon the taxpayer.
The Donaldson court goes on to cite a dozen cases going back to Handy v. New Orleans, 39 La. Ann. 107, 1 So. 593 (1887), in which Louisiana courts considered it settled that "a taxpayer is entitled to maintain a proceeding instituted by him where the object of the suit is to enjoin the execution, enforcement, or award of an unauthorized or illegal act or contract." Donaldson, supra at 481, 109 So. 34.
*1088 "Our courts have long recognized the right of a taxpayer to seek judicial review, including the annulment of a contract, of acts of public servants which are alleged to have been contrary to law, unconstitutional or illegally confected." Roussel v. Noe, 274 So.2d 205, (La.App. 1 Cir.1973), writ refused 281 So.2d 743 (La.1973), citing Donaldson, supra. "Louisiana jurisprudence has long recognized the right of a taxpayer to enjoin unlawful action by a public body." Alliance for Affordable Energy, supra.
More recently, the Louisiana Supreme Court has discussed the requirements for standing in taxpayer suits in Louisiana Associated General Contractors v. Calcasieu Parish School Board, supra:
In League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980), we refined our previous standard and held a taxpayer will not be allowed to compel the performance of a public duty by mandamus absent a showing of some special interest which is separate and distinct from the interest of the public at large.
* * *
In League of Women Voters we were careful to point out that, unlike a citizen attempting to compel the performance of a public duty, a citizen attempting to restrain unlawful action by a public entity is not required to demonstrate a special or particular interest distinct from that of the public at large. Consequently, taxpayer plaintiffs seeking to restrain action by a public body are afforded a right of action upon a mere showing of an interest, however small and indeterminable.
"The fact that the taxpayer's interest might be small and not susceptible of accurate determination is not sufficient to deprive him of the right. The action is regarded as having a public character and as being a proceeding in which the public complains." Woodard v. Reily, 244 La. 337, 152 So.2d 41 (1963), citing Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941).
The Supreme Court again restated the proper test for standing in the case of Meredith v. Ieyoub, 96-1110 (La.9/9/97), 700 So.2d 478. Explaining its holding in Alliance for Affordable Energy, the court stated:
In that case, the Alliance for Affordable Energy sought to restrain the New Orleans City Council from entering into professional service contracts with certain utility consultants in violation of the New Orleans City Charter. We held that because plaintiffs seek to restrain the City Council from entering into certain contracts allegedly through an illegal process, plaintiffs are not required under League of Women Voters and its progeny to demonstrate a special or particular interest which is distinct from the public at large.... Rather, plaintiffs are afforded a right of action upon a mere showing of an interest, however small and indeterminable. Although in [Alliance for Affordable Energy ] we found that the plaintiffs had proven that the action constituted a burden on their tax base, we also held that plaintiffs' interest in the health and welfare of the residents of Orleans Parish was sufficient for standing purposes. (internal quotes and citations omitted)
In Davis v. Franklin Parish School Board, 412 So.2d 1131, 1133 (La.App. 2 Cir.1982), the plaintiff was neither a property owner nor parent of school children; he lived with his mother near the affected property, hunted on it, and paid sales tax. We concluded that the plaintiff was "attempting to restrain action by a public body that affects the public fisc, and we must find that he has an interest, however small and indeterminate, sufficient to afford him a right of action."
*1089 Similarly, in McCall v. McCall, supra, the Fourth Circuit ruled that a taxpayer had "at a minium a `small and indeterminable' interest" in challenging the legality of the creation of a development corporation and the leases granted to it by a municipality, in a suit concerning gaming operations in New Orleans.
In light of this recent and consistent jurisprudence on standing, we must conclude that the trial court erred in granting defendants' exception of no right of action. Following the Meredith court's ruling that the plaintiffs in Alliance for Affordable Energy had standing merely upon their interest in the health and welfare of the residents of that parish, the plaintiffs in the instant case also have at least a small and indeterminable interest in seeing that their elected representatives obey the laws and not enter into illegal contracts in matters pertaining to the public fisc.
The argument that this contract represents a benefit and not a burden to the public fisc is without merit. The illegal surrender of the statutory right to tax the riverboats cannot be considered a benefit to the public fisc. See Graham v. Jones, 198 La. 507, 531, 3 So.2d 761, 769 (1941) (taxpayer may attack statute which exempts persons or property from taxation).

Conclusion
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings. Costs are assessed one-half to Louisiana Riverboat Gaming Partnership and Horseshoe Casino. The other half are not assessed. La. R.S. 13:4521.
REVERSED AND REMANDED.
NOTES
[1] Specifically, the Louisiana Riverboat Gaming Partnership d/b/a Isle of Capri Casino-Bossier City, the City of Bossier City, the Sheriff of Bossier Parish, the Greater Bossier Economic Development Foundation, and Horseshoe Casino asserted the exception of no right of action.