392 So.2d 477 (1980)
STATE of Louisiana, THROUGH the OFFICE OF the GOVERNOR, Division of Administration and the Facility Planning and Control Department,
v.
L. W. EATON CONSTRUCTION COMPANY, INC. et al.
No. 13284.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
Rehearing Denied December 15, 1980.
Joseph S. Cage, Jr., Robert Lee, Monroe, for plaintiff-appellant, State of Louisiana, through office of the Governor, Etc.
Frank P. Simoneaux, Baton Rouge, for defendant-appellee, L. W. Eaton Const. Co., Inc.
John N. Samaha, Baton Rouge, for defendant-appellee, American Arbitration Ass'n, Inc.
Before LOTTINGER, EDWARDS and PONDER, JJ.
*478 LOTTINGER, Judge.
One issue is before us in these two injunction proceedings, which have been consolidated on appeal: Was the public bid law (La.R.S. 38:2211 et seq.) violated when the State awarded the contract for construction of the School of Veterinary Medicine on the Louisiana State University campus in Baton Rouge?
The State first sought, but failed to obtain, a preliminary injunction to enjoin arbitration proceedings commenced by the defendant, L. W. Eaton Construction Company, after construction of the school was completed. While the appeal from the trial court's refusal to grant the preliminary injunction was pending in this court, the hearing for a permanent injunction took place. The State was again unsuccessful in the lower court, and a second appeal was taken.[1] In both proceedings, the State claimed the contract containing the arbitration provision was absolutely null because Eaton employees learned of impending plan changes the day before bids were submitted. The State contended that Eaton's knowledge of the plan changes, regardless of whether Eaton relied on such knowledge, violated the bid law provision requiring that any addendum modifying the plans and specifications within 72 hours prior to bid opening necessitated a one-week delay in bid opening. La.R.S. 38:2211(B). The State also claimed that Eaton violated the provision of the bid law requiring that bids be submitted "according to the contract, plans and specifications as advertised. La. R.S. 38:2211(A), emphasis ours.[2]
In both proceedings, Eaton asserted that the contract was validly confected in conformance with the bid law. The company also claimed the State should be estopped from asserting the contract's invalidity because the State eventually accepted the change in steel size and later accepted the entire project.
Because the issues in both proceedings are identical, we consolidated these cases on appeal. Both proceedings will be handled in this opinion, but separate judgments will be rendered.

THE FACTS
On February 27, 1973, Eaton submitted a $15.8 million bid on the vet school job, some $400,000 less than the next to lowest bidder. The day before the bids were submitted, Robert Cleveland, a structural engineer for the architect on the job, informed Eaton's principal estimator that the plans and specifications for reinforcing steel bars probably would be changed. As advertised prior to bidding, the plans and specifications called for grade A-40 steel. The change would allow suppliers to furnish grade A-60 steel. Because the A-60 steel had a stronger tensile strength than the A-40 steel, use of the stronger steel allowed the size of some of the bars to be reduced. The reduction in circumference resulted in a reduction in the weight and the price of the steel used on the job.
When a state inspector discovered the smaller sized steel about a year after construction commenced, the State sought a credit for the reduced steel. Eaton vigorously protested allowance of a credit for the smaller and cheaper steel, claiming that the credit had been reflected in its bid on the job. Later, however, Eaton reluctantly agreed to allow a $15,650.00 credit for the reduced amount of steel. A change order officially approving the stronger but smaller sized steel was issued after the credit was given to the State, and the job proceeded to completion. Both sides in this litigation agree that the steel used on the job is as good as or better than that specified originally in the plans and specifications. The State accepted the building as substantially complete in May, 1978, and the school is now occupied.
*479 In June, 1978, under the arbitration clause in the contract, Eaton filed a demand for arbitration with the second defendant in this case, the American Arbitration Association, seeking $6.7 million in an upward equitable adjustment to the contract price. The State then filed this suit to enjoin the arbitration proceedings on the ground that the contract containing the arbitration provision was null and void because of the alleged bid law violation.
At the hearing on the preliminary injunction and in additional testimony at the permanent injunction hearing, Eaton's executive vice president, David H. Broussard, testified that Eaton placed no reliance on the information it received from the structural engineer on the day before the bids were submitted. Mr. Broussard's testimony and Eaton's documentary evidence indicate that Eaton's final bid was calculated on the price of A-40 steel as per the plans and specifications as advertised. The evidence shows that the change in the size and price of the steel was not officially approved by the structural engineer until after Eaton learned that it would be awarded the contract on the job. The preponderance of the testimony indicates that Eaton's employees relied in good faith on the apparent authority of the structural engineer to change the steel size after bidding, but that Eaton did not rely on the purported plan changes in submitting its bid.
Additionally, Eaton employees testified that they were under the impression that other contractors and subcontractors had been notified of the probable plan change in steel specifications. However, the vice president and estimator of one of the other contractors who bid on the job could not specifically recall whether he was informed of the impending plan change prior to bidding. Conspicuously missing from the record in this regard is the testimony of the structural engineer who purportedly informed Eaton and perhaps other contractors of the planned change in specifications. Our opinion in this case, however, does not turn on whether Eaton alone received the prebid information.
The State places much emphasis on the fact that Eaton changed its position concerning its reliance on the information received by the structural engineer on the day prior to bidding. When the State sought the credit for the smaller steel, Eaton contended that the bid price reflected the smaller steelan indication that Eaton had placed reliance on the structural engineer's information. In these two proceedings, however, Eaton is claiming that it did not rely on the structural engineer's statement when it made the bid on the job. Eaton's inconsistent positions were explained in detail by Mr. Broussard during his lengthy testimony on the stand. Broussard admitted that he had not fully investigated his files when the State sought the credit and that he truly believed at that time that no credit was due. Upon further investigation in preparation for the injunction proceedings, Broussard discovered that Eaton's bid had been based on the A-40 steel as provided in the plans and specifications. The trial judge believed Mr. Broussard's explanation and expressly so stated. Our thorough review of the record convinces us that the trial court correctly decided the factual issues in this case. We, too, find that Eaton placed no reliance on the information it received from the structural engineer prior to the bid date.

THE LAW
The public bid law is a prohibitory law enacted in the public's interest to help insure that tax dollars for public works are spent wisely. Competitive bidding following public advertisement is the vehicle by which government entities seek to get the lowest possible price from a responsible bidder on a public works job. Preventing exorbitant and extortionate prices as well as favoritism is the primary goal of the law. Haughton Elevator Division v. State, through the Division of Administration, 367 So.2d 1161 (La.1979). A contract made in violation of the public bid law is absolutely null and invalid. Pleas of estoppel and ratification cannot be heard because the nullity is absolute in character. Boxwell v. *480 Department of Highways, 203 La. 760, 14 So.2d 627 (1943). Additionally, if a contract is void ab initio because of some fatal defect in its confection any arbitration provision contained within it is also a nullity. West Baton Rouge Parish School Board v. T. R. Ray, Inc., 367 So.2d 332 (La.1979); George Engine Company, Inc. v. Southern Shipbuilding Corporation, 350 So.2d 881 (La.1977).
Besides requiring bidders to submit proposals in accordance with the advertised plans and specifications, the bid law provides that any changes in the plans and specifications within 72 hours of bidding require a one week delay in the bidding process so that all bidders can take the changes into consideration. La.R.S. 38:2211(B). The purpose of this provision is, again, fairness to all persons interested in bidding on the job. As a matter of public policy, if plan changes on a public works job are made within three days of the bid opening date the bidding public should be given time to gather the information necessary to comply with the plan changes.
Our thorough review of the facts and circumstances of this case and the law relating to public bidding in this state convinces us that there has been no violation of the public bid law. The verbal statement by the structural engineer to Eaton employees the day prior to bidding simply did not amount to a change in the plans and specifications necessitating a delay in the bid process. That the structural engineer's statement did not amount to a change in the plans and specifications is reflected by the fact that Eaton, and apparently the other bidders on the job, submitted quotations based on the reinforcing steel as specified in the written plans and specifications. We disagree with the State's contention that a mere verbal communication of a probable plan change constitutes a violation of the bid law. Unless some reliance is placed by the successful bidder upon such a verbal communication or some favorable benefit is obtained therefrom, the fact that a contractor or contractors are verbally informed in advance of a likely change in plans does not constitute a bid law violation.
Hypothetically, if the short supply of A-40 steel would have caused some contractors not to bid, then the knowledge by one or more contractors that a probable change to a more readily available steel would be approved after the awarding of the contract could conceivably be a benefit to those with such knowledge. That, however, has not been shown to be the situation in this case.
The record in this case is devoid of evidence that Eaton received favorable treatment on this job or placed any reliance whatsoever on the statements of the structural engineer. And, as we stated earlier, the verbal communication by a structural engineer of a probable change in steel specifications does not amount to a change in the plans and specifications which would trigger the provisions of La.R.S. 38:2211(B).
The facts in this case are clearly distinguishable from those in W. R. Aldrich & Company v. Gravity Drainage District No. 1 of Rapides Parish, 238 La. 190, 114 So.2d 860 (1959) and the cases cited therein. The public body in the Aldrich case made a substantial change in the planned project after bids were submitted, and this change resulted in the second to lowest bidder getting the job. The court in Aldrich noted that such major manipulations of the contract items after bids were submitted would allow a public body to award the contract to any one of the bidders, a practice that could defeat the purpose of the public bid laws. In the case at bar, there was no material departure in the contract from the plans and specifications upon which the bids were submitted. The minor change in the type of steel allowed to be used on the job resulted in no favoritism to one contractor over the other and did nothing to defeat the purpose of the law requiring contracts to be let upon bids submitted according to advertised specifications.
The cases of Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34 (1926) and Adams v. Town of Leesville, 210 La. 106, 26 So.2d 370 (1946) are likewise distinguishable upon their facts.
*481 Therefore, for the above and foregoing reasons, the decision of the trial court in case No. 13284 is affirmed. The costs of these consolidated cases, amounting to $1,321.58, will be borne by the State.
AFFIRMED.
PONDER, Judge, dissenting.
I respectfully dissent.
If I understand the majority's opinion, the affirmation is based upon the conclusion that there was no violation of the public bid law, that there was no reliance upon the change in plans and that the change in plans was not substantial. I pretermit any discussion that to some extent these conclusions are internally inconsistent.
The applicable statutory provision is found in LSA-R.S. 38:2212 B reading as follows:
"B. No public entity shall issue or cause to be issued any addenda modifying plans and specifications within a period of seventy-two hours prior to the advertised time for the opening of bids, excluding Saturdays, Sundays and any other legal holidays. If the necessity arises to issue an addendum modifying plans and specifications within the seventy-two hour period prior to the advertised time for the opening of bids, then the opening of bids shall be extended exactly one week, without the requirement of readvertising as provided by Subsection A of this Section."
I believe it to be too simplistic, if not more, to assert that there has been no modification of plans and specifications because the structural engineer conveyed the information orally and informally rather than in a formal addendum.
The purpose of the public bid law is to require competitive bidding so as to get the lowest price from a responsible bidder preventing exorbitant prices and favoritism. The hypertechnical requirement that any change, to be a change, must be a formal one can lead to the very practices sought to be prohibited by the public bid laws.
I find no requirements in the above statute and in the jurisprudence that there must be reliance upon the change or that the change must be substantial. The majority has cited no such statutory or jurisprudential requirement. The danger of these interjections is pointed up by the inconsistent positions taken by the appellee, that yes, it did rely on the change, and no, it did not rely on the changes. Even if the inconsistency be explained it still shows the danger of a subjective requirement.
Since I believe that the majority's opinion is an approval of a violation of both the letter and the spirit of the public bid law, I respectfully but firmly dissent.
NOTES
[1] Number 13835 on the Docket of this Court, 392 So.2d 481.
[2] The public bid law has been amended numerous times over the years. The provision applicable to the bids submitted in this case is R.S. 38:2211 as amended by Act 274 of 1970. Section 2211 has since been renumbered to Section 2212, but its substantive provisions relating to this case remain the same today.