**PERCY J. MATHERNE CONTRACTOR, INC.**

v.

**GRINNELL FIRE PROTECTION SYSTEMS CO.**

Civil A. No. 94–04.

United States District Court, M.D. Louisiana.

Aug. 9, 1995.

William R. D'Armond, Melanie Moreland Hartmann, and Theresa R. Hagen, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, for Percy J. Matherne Contractor, Inc.

Peter Anthony Feringa, Jr., Wilbur Anthony Toups, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, and Christoffer C. Friend, Rene A. Curry, Jr., A.P.L.C., New Orleans, LA, for Grinnell Fire Protection Systems, Division of Grinnell Corporation Corporation.

C. Edgar Cloutier and Robert E. Peyton, Christovich & Kearney, New Orleans, LA, for St. James Parish School Board.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on cross motions for summary judgment filed by defendant Grinnell Fire Protection Systems Co. ("Grinnell") and plaintiff Percy Matherne Contractor, Inc. ("Matherne"). For the reasons stated below, the motion by Grinnell is denied, and the motion by Matherne is granted.

### I. BACKGROUND

This is an action by a general contractor, Matherne, against a subcontractor, Grinnell, to recover damages as a result of Grinnell's failure to perform according to its bid for the fabrication and installation of a sprinkler system. In late 1992, the St. James Parish School Board ("School Board") invited bids for additions and renovations to Lutcher High School in Lutcher, Louisiana (the "Project"). General contractors' bids were due on February 2, 1993 at 4:00 p.m. One of the items included in the Project was the fabrication and installation of a fire protection system.

Prior to the February 2, 1993 deadline (the exact date is disputed), the School Board and its architects issued four addenda to the Project plans that altered the scope of certain portions of the Project. On February 2, 1993 at 3:19 p.m., just before the 4:00 deadline, Grinnell submitted a bid to Matherne for the fire protection system in the amount of $79,-500. In preparing this bid, Grinnell states that it did not consider addenda numbers 3 and 4. It only took into consideration the original specifications and those contained in addenda numbers 1 and 2. Matherne received one other bid for the fire protection portion of the Project in the amount of $218,-094.

Plaintiff claims with supporting evidence that on the day the bids were due, Don Matherne noted that Grinnell's bid was drastically below that of the other bidding subcontractor and had an employee call Grinnell to confirm the correctness of its bid. The Matherne employee, Mr. Leblanc, testified that he called Wallace LeBan of Grinnell to ask whether LeBan had seen all four adden-

da and whether he had included the outside plumbing and sprinkler work in his price because Grinnell's price was substantially lower than the only other bid. (Ex. 7, Affidavit of Don Matherne; Leblanc Depo. at 49, 52.) Further, Mr. Leblanc testified that he told LeBan that he would give him the opportunity to confirm Grinnell's bid and asked LeBan to call him back. (Leblanc Depo. at 52.) Leblanc testified that he called LeBan back a few minutes later to find out if Matherne could use its bid price. *Id.* at 53. Leblanc stated, "He told me he had seen all the addenda, his price was good, use the price. I hung up the phone, told Don, use the price." *Id.* In his deposition, Mr. LeBan testified that he did not remember these phone calls or their content. LeBan Depo. at 60–63. However, Matherne's phone records indicate that two calls were made between 3:25 and 3:45 on February 2, 1993 to a phone number, which LeBan admitted was Grinnell's phone number. Ex. 6 to Plaintiff's Motion, Phone Bill; LeBan Depo. at 59–60. Before 4:00 p.m. on February 2, 1993, Matherne submitted its general bid, which incorporated the $79,500 Grinnell bid, to the School Board.

Grinnell claims that on February 8, 1995, it learned for the first time of the existence of addenda 3 and 4. It claims that upon learning of these addenda, it called Matherne to revoke its subcontract offer. LeBan testified that when he saw the two addenda, he called Don Matherne to tell him that these addenda would drastically increase the price Grinnell had previously quoted. LeBan Depo. at 68. Matherne replied that he had already given the bid to the School Board, that he had used Grinnell's quote and that he could not change his price. *Id.* Indeed, Matherne's bid to the School Board was irrevocable for thirty days. Ex. D to Defendant's Motion, Advertisement for Bids. On February 24 or 25, LeBan told Don Matherne that the price would be increased to over $200,000. LeBan Depo. at 69. On March 2, 1995, LeBan wrote Matherne that after reviewing all of the plans with addenda, the price would be $237,500. Ex. H to Defendant's Motion.

Matherne's bid to the School Board on February 2, 1993 was the lowest among the general contractors; however, even its bid was above the School Board's budget. On February 6, 1993, Matherne met with the School Board's architects to discuss ways to reduce costs and get the Project within the budget. The School Board requested an opinion from the Attorney General concerning whether the adoption of post-bid modifications would violate the Louisiana Public Bid Law, La.R.S. 38:2211, *et seq.* Specifically, it asked whether it "could make changes to the construction contract in an amount approximately 8% less than the lowest bid and award the contract to the previous low bidder without the necessity of throwing out all bids and readvertising." Att. 1 to Plaintiff's Motion, Opinion of Attorney General ("A.G. Opinion") at 1. The Attorney General issued an opinion that such post-bid modifications would not violate the Public Bid Law. *Id.*

The School Board voted to accept Matherne's bid with the changes on March 2, 1993. Matherne and the School Board signed a contract on March 23, 1993, with an effective date of March 9, 1993, for a price of $7,790,-957, a reduction from Matherne's original bid of $8,500,000. The savings were effected by two means—the School Board elected part of the alternates that were contained in the original bids, and it made certain "post-bid changes" in design by a "change order" executed contemporaneously with its contract. On March 24, 1993, Matherne transmitted a standard form agreement to Grinnell for the sprinkler system work at its bid price of $79,500. The agreement incorporated the post-bid changes and addenda 3 and 4. On April 7, 1993, Grinnell returned the contract to Matherne, stating that it was unable to accept that contract price for the scope of work involved in the Project. Thereafter, Matherne contracted with Superior Sprinkler Corporation to perform the fire protection system work for $192,985. Matherne filed this litigation to recover the difference between the $79,500 bid and the substitute contract price of $192,985.

Grinnell contends that it is entitled to summary judgment dismissing plaintiff's claim against it on three theories. First, Grinnell claims that the contract between the School Board and Matherne is absolutely

null because the parties violated Louisiana's Public Bid Law by issuing addendum number 4 on the same day that the bids were due and by engaging in significant post-bid negotiations and alterations. Second, Grinnell alleges that Matherne had no contract with Grinnell because Grinnell timely withdrew its bid before the School Board accepted Matherne's bid. Thirdly, Grinnell claims that there was never a contract between Grinnell and Matherne because the agreement Matherne forwarded to Grinnell on March 24, 1993 constituted a counter-offer containing terms substantially different than the terms upon which Grinnell's bid was based.

Matherne's motion for summary judgment alleges several alternative theories of recovery against Grinnell that are based in contract, quasi-contract and negligence. Because the Court finds that Matherne states a claim for detrimental reliance under La.Civ. Code art. 1967, it need not consider Matherne's remaining theories of recovery. Further, the Court finds that there are no issues of material fact that would prevent summary determination of Matherne's recovery on the theory of detrimental reliance.

## II. ANALYSIS

### a. Grinnell's Motion

Grinnell claims that the contract between Matherne and the School Board is null and void because it violates Louisiana's Public Bid Law, La.R.S. 38:2211, *et. seq.* Grinnell further claims that since the primary contract was void, it had no valid obligation to perform, and its liability cannot be premised on its refusal to participate in a violation of the Public Bid Law.[1]

■ Louisiana's Public Bid Law was enacted to secure free and unrestricted competition among bidders, to protect taxpayers from contracts entered into by public officials who are motivated by favoritism and fraud, and to avoid contracts for exorbitant and extortionate prices. *State, Through Office of Governor v. L.W. Eaton,* 392 So.2d 477, 479

(La.App. 1st Cir.1980); *Grace Construction Co. v. St. Charles Parish,* 467 So.2d 1371, 1374 (La.App. 5th Cir.1985). Because the Public Bid Law is prohibitory, Louisiana courts have held that any contravention of its provisions renders the resulting contract null, void and of no legal consequence. *Louisiana Associated General Contractors v. Calcasieu,* 586 So.2d 1354, 1362 n. 14 (La.1991); *Badon's Employment, Inc. v. Smith,* 359 So.2d 1284 (La.1978).

■ Grinnell claims that the School Board violated the Public Bid Law by issuing Project addendum number 4 within 72 hours of the bid opening in violation of La.R.S. 38:2212(C)(2). This provision precludes a public entity from issuing any addenda modifying plans within 72 hours of the advertised opening of bids excluding Saturdays, Sundays, and any other legal holidays. As stated, the advertised time for the bid opening was February 2, 1993 at 4:00 p.m. Grinnell claims that addendum number 4 issued on that same day based on Article 9.1.6 of the contract between the School Board and Matherne. Article 9.1.6 lists the four addenda and states the date of issuance beside each addendum. It indicates that number 4 was issued on February 2, 1993.

Matherne argues that this date is a mistake. It claims that the addendum's timeliness is evidenced by the document itself. The addendum states that it was issued on January 27, 1993, which is more than 72 hours prior to the bid opening. Affidavit of Don Matherne, Ex. 4(D), Addendum No. 4. In addition, Matherne's copy of the addendum was stamped received on January 29, 1993. *Id.* Further, the architect verified by affidavit that addendum number 4 was issued on January 27, 1993 and mailed that day to its list of contractors and suppliers. Affidavit of Ray Escuriex ¶ 6. This evidence strongly suggests that addendum 4 actually issued on January 27, 1993. Grinnell relies only on the date in the contract to rebut it. Moreover, Grinnell did not even ask the Pro-

1. Defendant states in its opposition that it is not asserting the nullity of the prime contract. Opposition at 24 n. 9. However, its motion for summary judgment clearly alleges that the prime contract is an "absolute nullity." Further, defendant's claim that it was not obligated to perform the subcontract because there was no legal prime contract assumes the nullity of the School Board/Matherne contract.

ject architects to be included on the list of contractors and suppliers who requested copies of the plans and specifications on this Project. Ray Escuriex Affidavit at ¶ 4 and Ex. A. Based on the foregoing evidence, the Court determines that there is no material issue of fact that the date of February 2, 1993 shown on the primary contract was incorrect. The date on the addendum indicates that the issuance was timely. Therefore, the prime contract is not null and void under La.R.S. 38:2212(C)(2).

■ Grinnell also contends that the primary contract violates the Public Bid Law because of the post-bid opening modifications made by the School Board and Matherne for the purpose of bringing the Project within the budget. La.R.S. 38:2212(A)(1)(a) provides as follows:

All public work exceeding the contract limit as defined herein, including labor and materials, and all purchases of any materials or supplies exceeding the sum of ten thousand dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest bidder who had bid *according to the contract, plans, and specifications as advertised,* and no such public work shall be done and no such purchase shall be made except as provided in this Part.

(emphasis added).

The Louisiana Supreme Court, interpreting this provision, has held that it is illegal for plans and specifications to be altered after bids have been received without a new advertisement giving all bidders an opportunity to bid under the new conditions. *W.R. Aldrich & Co. v. Gravity Drainage District Number 1 of Rapides Parish,* 238 La. 190, 114 So.2d 860, 863 (1959), *citing, Donaldson v. Police Jury of Tangipahoa Parish,* 161 La. 471, 109 So. 34, 40 (1926). The Court stated "To permit a material departure in the contract from the terms and specifications upon which the bidding is had would open wide the door to favoritism and defeat the purpose of

the law in requiring contracts to be let upon advertised specifications." *Id.*

The School Board's concern about the propriety of its post-bid negotiations with Matherne is evidenced by its request for the Attorney General's opinion on this issue. The Attorney General found that the School Board could properly make changes to the construction contract to reduce the cost of the Project to 8% less than the original lowest bid, and then award the contract to the original low bidder. The Attorney General reasoned that although the propriety of post-bid alterations to a contract are not addressed in the text of the public bid statute, the Supreme Court held them unlawful in *Aldrich, supra.* However, the Attorney General properly distinguished *Aldrich* from the instant case. In *Aldrich,* the post-bid elimination of certain items of construction resulted in a change in the low bidder. The Court ruled that the Public Bid Law did not "permit the manipulations of items within a contract in such a manner as to award the contract to any one of the bidders." *Aldrich,* 114 So.2d at 863. The potential that a contract award is based on favoritism and fraud because of post-bid alterations is significantly curtailed when the contract is awarded to the original low bidder. *Cf. State of Louisiana, Through the Office of Governor v. L.W. Eaton Construction Co.,* 392 So.2d 477, 480 (La.App. 1st Cir.1980) ("The minor change in the type of steel allowed to be used on the job resulted in no favoritism to one contractor over the other and did nothing to defeat the purpose of the law requiring contracts to be let upon bids submitted according to advertised specifications.").

Under New York Public Bid Law, which is essentially the same as Louisiana's [2], the courts have distinguished between post-bid negotiations with the original low bidder and negotiations with others, which could lead to the hiring of a contractor other than the original low bidder. *See Prete Enterprises v. Bartlett, Brainard, Eacott, Inc.,* 1995 WL 416154, slip op. No. 95–374293 (Conn.Super. July 7, 1995), *citing, Matter of Fischbach &*

---

**2.** New York law, like Louisiana law, does not contain an express prohibition against post-bid negotiations with a low bidder prior to awarding the contract. *See Matter of Fischbach & Moore,*

*Inc. v. The New York City Transit Authority,* 79 A.D.2d 14, 435 N.Y.S.2d 984, 986 (1981). Rather, both provisions require competitive bidding to determine the lowest bidder. *Id.*

*Moore, Inc. v. The New York City Transit Authority,* 79 A.D.2d 14, 435 N.Y.S.2d 984, 986 (1981). These courts have reasoned that post-bid negotiations with the announced lowest bidder are not inconsistent with the policy of avoiding favoritism; negotiating with any other bidder, on the other hand, directly contravenes the policy. *Id. See also Fabrizio & Martin, Inc. v. Board of Education,* 523 F.2d 378 (2d Cir.1975). This reasoning, while not binding on this Court, is persuasive.

Here, Matherne was the low bidder from the initial opening of bids. The School Board indicated as much to Matherne and sought to negotiate with Matherne to reduce the cost of the Project. There is no evidence that the School Board negotiated with anyone other than Matherne. Further, there is no indication of favoritism or corruption in the negotiation and confection of the final contract.

■ Moreover, Grinnell asserts that the contract is void as a defense to the present litigation. The Public Bid Law provides an enforcement procedure. It states:

> The district attorney in whose district a violation of this Part occurs, the attorney general or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.

La.R.S. 38:2220(B). Grinnell has provided no authority that establishes its standing under the Public Bid Law to challenge the validity of the prime contract; unlike the usual case, it is not a prime contractor claiming to be the low bidder who was improperly denied a contract by the alleged Public Bid Law violation. Nor has the Court found authority permitting a subcontractor in the posture of this plaintiff to challenge the validity of the prime contract.

■ Notwithstanding Grinnell's dubious standing, the Court finds that it failed to preserve any right it may have had to assert the invalidity of the primary contract. In *Airline Construction Co. v. Ascension Parish School Board,* 568 So.2d 1029 (La.1990), the Louisiana Supreme Court made clear that such challenges must be timely asserted or they are waived. In *Airline Construction,* the Supreme Court held that an unsuccessful bidder who fails to resort to the relief granted by the statute by timely seeking to enjoin the performance of the contract when the facts necessary to take action are known or "readily ascertainable" is precluded from thereafter recovering damages. *Id.* at 1033. The Court reasoned that a plaintiff should not be allowed to sit on its knowledge of a Public Bid Law violation and then seek to benefit from it once the public body cannot practically correct any errors in letting the contract. *Id.* at 1034–35. While the plaintiff in *Airline* sought to recover damages, and plaintiff here asserts the nullity of the prime contract defensively, the Court finds no reason to depart from the Supreme Court's reasoning in *Airline.*

The timeliness of an action under 38:2220(B) depends on the facts and circumstances of each case including when the attacking bidder learned of the violation, when the public body became indebted to the successful bidder, and the time period between the awarding of the contract and substantial completion of the project. *Id.* at 1035. Failure to timely assert the right to invalidate the contract constitutes waiver. *Hartman Enterprises, Inc v. Ascension–St. James Airport and Transportation Authority,* 582 So.2d 198, 201 (La.App. 1st Cir.), *writ denied,* 582 So.2d 195 (La.1991).

The post-bid changes to the primary contract were reasonably ascertainable by Grinnell by March 24, 1993, when Matherne transmitted the contract to Grinnell with the post-bid changes attached to it. Further, on April 14, 1993, Matherne indicated that it intended to hold Grinnell responsible for damages if Grinnell did not perform the contract at its bid price. Ex. 15 to Plaintiff's Motion; Letter from Plaintiff's attorneys to Grinnell. Therefore, by April of 1993, Grinnell was aware that if the contract went forward, it would be sued for damages and that post-bid changes had been made, which may have provided a ground for invalidating

the contract. Nevertheless, Grinnell did not immediately seek injunctive or other relief but instead waited to assert the invalidity of the contract until July 1994 when it filed an amended answer in this proceeding. By that time, the Project was substantially underway. *See* Matherne Affidavit (project was 78% complete by January 1995). The filing of a suit for injunctive relief within ten days of learning of a Public Bid Law violation is reasonable. *Stafford Construction Co., Inc. v. Terrebonne Parish School Board,* 612 So.2d 847 (La.App. 1st Cir.1992). A delay of six weeks when construction has begun, but is not substantially complete, is unreasonable. *Hartman Enterprises, supra.* The Court finds Grinnell's assertion of invalidity after some fifteen months, when the Project was substantially underway is an unreasonable delay. Therefore, Grinnell has waived any right it may have had to assert the invalidity of the contract, and its attempt to defend plaintiff's claim through an annulment of the primary contract must fail.

Finally, defendant moves for summary judgment asserting that there was no contract between Grinnell and Matherne because Grinnell timely withdrew its quote. Alternatively, Grinnell argues no contract existed because Matherne did not accept Grinnell's bid because the contract it forwarded to Grinnell included substantially different plans and specifications than the plans upon which Grinnell based its bid. Therefore, Grinnell contends that the final version of the contract constituted a counter-offer rather than an acceptance. As stated below, it is the Court's opinion that Matherne is entitled to recover from Grinnell based upon a quasi-contract created by Matherne's reasonable reliance to its detriment on Grinnell's offer. Because this reasoning does not require the existence of a contract between Grinnell and Matherne, it is not necessary for the Court to address Grinnell's argument that no contract was confected between the parties.

**B. Matherne's Motion for Summary Judgment**

Matherne seeks to recover from Grinnell the difference between Grinnell's bid of $79,500 and the amount Matherne had to pay a replacement subcontractor when Grinnell refused to perform under its bid. Matherne premises its recovery on various contract, quasi-contract and negligence theories. The Court acknowledges that quasi-contractual recovery generally occurs when there is no valid contract. Here, the parties have labelled their various communications as an offer, acceptance, revocation or counteroffer, according to their interests. However, the Court finds that the real interest plaintiff seeks to protect is its reliance interest. Further, the recovery Matherne seeks—the difference between the Grinnell bid and the replacement bid—is the same whether based on breach of contract or detrimental reliance. Therefore, rather than straining to fit the parties' negotiations into the contours of a contract, the Court finds that Matherne's recovery is properly based on the doctrine of detrimental reliance.

■ As stated, the cause of action for detrimental reliance does not depend upon the existence of a valid, enforceable contract. *Morris v. People's Bank & Trust Co.,* 580 So.2d 1029 (La.App. 3d Cir.), *writ denied,* 588 So.2d 101, 102 (La.1991). Rather, the existence of a promise and a reasonable reliance on that promise to one's detriment are the only requirements. *Id.* at 1036. La.Civ. Code art. 1967 provides:

Cause is the reason why a party obligates himself.

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

■ Here, the bid submitted by Grinnell constituted a promise. Upon submission of the bid, Grinnell knew that if its bid were the lowest, Matherne would rely to its detriment on the bid by incorporating it into its bid for the prime contract. In fact, Grinnell submitted the bid with the hope that it would be used by Matherne. Moreover, in this case,

there is strong evidence that before Matherne used Grinnell's bid, Grinnell knew that it intended such use, because Matherne told Grinnell its bid for the sprinkler system was substantially lower than the only other bid made. As stated above, a Matherne employee testified that he made two phone calls to Grinnell prior to relying on the bid for the purpose of ascertaining whether the bid was correct. Leblanc Depo. at 49–53. Matherne's long distance telephone bills corroborate this testimony. Ex. 6 to Plaintiff's Motion. Matherne claims that Wallace LeBan of Grinnell told Matherne that the bid was correct and could be relied upon. Leblanc Depo. at 53. LeBan does not dispute this testimony but states that he does not recall the telephone conversations. The evidence that Grinnell actually induced reliance on its bid is credible. However, even if Grinnell did not expressly assure Matherne that it could rely on the bid, Grinnell should have known that the bid would induce reliance for purposes of promissory estoppel.

In a well-known decision, Justice Traynor for the California Supreme Court applied promissory estoppel to bind a subcontractor to its bid under circumstances similar to those present here. The Court stated:

> When the plaintiff [general contractor] used the defendant's [subcontractor's] offer in computing his own bid, he bound himself to perform in reliance upon defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest and that it would be included by plaintiff in his bid ... Defendant had reason not only to expect plaintiff to rely on its bid but to want him to.

*Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757, 760 (1958); *see also Preload Technology, Inc. v. A.B. & J. Construction Co.*, 696 F.2d 1080 (5th Cir.1983) (subcontractor submitted lowest bid intending that it be final and that it would be relied upon by general contractor).

The Court further finds that Matherne was reasonable in relying on Grinnell's bid. Its reasonableness is supported by its attempt to verify the bid before incorporating it. In addition, Matherne unquestionably relied upon the bid for the fire protection system in making its own bid to the School Board.

Finally, Matherne relied to its detriment on the Grinnell bid. Matherne's bid was irrevocable for thirty days. Though the School Board did not formally accept Matherne's bid within that thirty days, it indicated immediately that Matherne was the low bidder and began negotiating cost-reduction changes with Matherne. When the thirty days expired on March 4, 1993, negotiations were apparently near complete because the contract became effective on March 9, 1994. Under the circumstances, it would have been unreasonable for Matherne to withdraw its bid when it became revocable. Due to the extensive negotiations between Matherne and the School Board that had occurred up to March 1993, withdrawal at that late stage could have exposed Matherne to legal action.

Principles of equitable estoppel or detrimental reliance have often applied to grant recovery to a general contractor when a subcontractor reneges on its bid. The Fifth Circuit, applying Texas law on promissory estoppel, which is the functional equivalent of Louisiana's action for detrimental reliance stated:

> [A] subcontractor who submits a bid offer to a general contractor, knowing that the general contractor is going to rely on its bid in submitting the general bid, is bound unless it is clearly shown that the subcontractor's bid offer was not final.

*Montgomery Industries International, Inc. v. Thomas Construction Co.*, 620 F.2d 91, 97 (5th Cir.1980); *see also Preload Technology, supra,* (where subcontractor intended bid to be final and general contractor relied on the bid, subcontractor was bound by promissory estoppel); *Drennan v. Star Paving Co., supra* (since defendant subcontractor had reason to expect general contractor to rely on its bid and since general contractor is bound by its bid, promissory estoppel applies to bind subcontractor to its bid).

**826**

The Court finds that Matherne was reasonable in relying on the Grinnell bid and did so to its detriment so that Matherne is entitled to recover the expenses incurred as a direct result of its reliance. The Court further finds this "expense" to be the replacement of the Grinnell subcontract with a different subcontract at increased cost. Therefore, Matherne is entitled to recover the difference between the Grinnell bid and the replacement contract from Grinnell. Accordingly,

IT IS ORDER that the motion by Grinnell for summary judgment is DENIED.

IT IS FURTHER ORDERED that the motion by Matherne for summary judgment is GRANTED.